STEVE MORRIS, Bar No. 1543
sm@morrislawgroup.com
ROSA SOLIS-RAINEY, Bar No. 7921
rsr@morrislawgroup.com
MORRIS LAW GROUP
801 S. Rancho Dr., Ste B4
Las Vegas, Nevada 89106
Telephone:  (702) 474-9400
Facsimile: (702) 474-9422

TIMOTHY G. NELSON (*pro hac vice* application forthcoming)
timothy.g.nelson@skadden.com
EVA Y. CHAN (*pro hac vice* application forthcoming)
eva.chan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York  10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Attorneys for Applicants
EVENSTAR MASTER FUND SPC and
EVENSTAR SPECIAL SITUATIONS LIMITED

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| *In re Ex Parte* Application of EVENSTAR MASTER FUND SPC for and on behalf of EVENSTAR MASTER SUB-FUND I SEGREGATED PORTFOLIO; and EVENSTAR SPECIAL SITUATIONS LIMITED,<br><br>     Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery from JING CAO MO for Use in a Foreign Proceeding. | CASE NO.:<br><br>***EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN A FOREIGN PROCEEDING** |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................3

FACTUAL BACKGROUND ....................................................................................................4

    A.    RELEVANT PARTIES AND NON-PARTIES .....................................................4

        1.    Evenstar.....................................................................................................4

        2.    Fang Holdings ..........................................................................................5

        3.    Vincent Mo ...............................................................................................5

        4.    Jing Cao Mo (Mrs. Mo) ..........................................................................6

    B.    The Foreign Proceedings that are the Subject of this Application..........................6

        1.    Evenstar's Investment in Fang .................................................................6

        2.    The Cayman Proceeding:  Evenstar Requests that Fang  Be Subject to a Just and Equitable Winding Up Order ..................................6

        3.    Allegations in the Cayman Proceeding Concerning  Next Decade – and U.S. Properties ........................................................8

    C.    The Prior SDNY Application....................................................................................9

ARGUMENT ...........................................................................................................................9

I.    LEGAL FRAMEWORK ............................................................................................9

    A.    Section 1782 Standards.............................................................................................9

    B.    The Power of the Court to Proceed *Ex Parte*........................................................11

II.    THE APPLICATION MEETS SECTION 1782'S STATUTORY REQUIREMENTS....11

    A.    Mrs. Mo Is "Found" Within This District.................................................................11

    B.    The Discovery Sought Is For "Use" In A Foreign Proceeding..............................12

    C.    The Evenstar Entities Are "Interested Persons"......................................................13

III.    THE SECTION 1782 DISCRETIONARY FACTORS WEIGH IN FAVOR OF PERMITTING THE PROPOSED DISCOVERY ..............................................13

CONCLUSION........................................................................................................................16

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Advanced Micro Devices, Inc. v. Intel Corp.*,
  292 F.3d 664 (9th Cir. 2002) ...................................................................10

*Cryolife, Inc. v. Tenaxis Medical, Inc.*,
  No. C08-05124 HRL, 2009 WL 88348 (N.D. Cal. Jan. 13, 2009) .........................12

*In re Application of O'Keefe*,
  No. 2:14-cv-01518-RFB-CWH, 2016 WL 2771696 (D. Nev. Apr. 4, 2016) .................11

*In re Application of Savan Magic*,
  No. 2:17–cv–01689–JCM–NJK, 2017 WL 6454240 (D. Nev. Dec. 18, 2017),..............12, 13

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998)....................................................................15

*In re Ex Parte Application by Varian Medical Systems International AG*,
  No. 16-MC-80048-MEJ, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ................14, 15

*In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*,
  No. 2:14–cv–0797–GMN–NJK, 2014 WL 7706908 (D. Nev. Jun. 4, 2014) .............11, 12, 13

*In re Mak*,
  No. C 12-80118 MISC SI, 2012 WL 1965896 (N.D. Cal. May 31, 2012)...................14

*In re Republic of Ecuador*,
  No. C-10-80225 MISC CRB (EMC),
  2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ...................................................11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)..................................................................9, 10, 13, 14, 15

*Medeiros v. International Game Technology*,
  No. 2:16-cv-00877-JAD-NJK, 2016 WL 1611591 (D. Nev. Apr. 22, 2016) ...............10, 14

*Qualcomm Inc.*,
  No. 18-MC-80134-NC, 2018 WL 6660068 (N.D. Cal. Dec. 19, 2018) .......................12

## STATUTES

28 U.S.C. § 1782............................................................................... passim

Applicants/Petitioners Evenstar Master Fund SPC for and on behalf of Evenstar Master Sub-Fund I Segregated Portfolio, and Evenstar Special Situations Limited (together, "Evenstar"), hereby apply to this Court for an Order pursuant to 28 U.S.C. § 1782, to obtain discovery from Mrs. Jing Cao Mo for use in a pending litigation before the Grand Court of the Cayman Islands, Financial Services Division.

In support of this Application, Petitioners rely upon the points and authorities set forth below, as well as the Declarations of Fleur O'Driscoll and Elise S. Faust ("Faust Declaration"), and the exhibits referenced therein. [1]  The Proposed Order is attached as Exhibit A-1 to the Faust Declaration, and the proposed subpoenas *duces tecum* and *ad testificandum* to be issued are attached as Exhibit 2 to the Faust Declaration.

Petitioners respectfully submit that it is appropriate to proceed ex parte for the reasons set forth below on page 9-10. Applicants respectfully submit this *Ex Parte* Application for an Order to Take Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 ("Section 1782"), authorizing Evenstar to obtain discovery from Jing Cao Mo ("Mrs. Mo") for use in proceedings before a foreign or international tribunal.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICANT'S *EX-PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782

### PRELIMINARY STATEMENT

Evenstar seeks permission to issue subpoenas to an individual in this District, and to obtain documents and testimony for use in litigation against Fang Holdings Limited ("Fang") before the Grand Court of the Cayman Islands titled *Evenstar Master Sub-Fund I Segregated Portfolio et al. v. Mo et al.,* Cause No. FSD 278 of 2020(ASCJ) (the "Cayman Proceeding").

---

[1]   This Application refers to the accompanying Declarations of Fleur Elizabeth O'Driscoll ("O'Driscoll Decl.") and Elise S. Faust  ("Faust Decl.") attached hereto as Exhibits B and A, respectively.  The two proposed subpoenas, namely, one subpoena *duces tecum* and one subpoena *ad testificandum,* (the "Proposed Subpoenas") are attached as Exhibit A-2 of the Faust Declaration.

The Cayman Proceeding seeks the just and equitable winding up of Fang (a Cayman company whose headquarters are in mainland China). Evenstar commenced the Cayman Proceedings on grounds that, among other things, its Chairman and CEO, Mr. Vincent Mo (who controls an effective 71% voting interest) has engaged in self-dealing, and that Mr. Mo and his management have otherwise acted to the detriment of shareholders, including Evenstar. The discovery sought by Evenstar is pertinent to these matters: Mrs. Mo is a director and/or trustee of certain private family companies and non-profit entities that have engaged in, or are linked to, transactions that are specifically referenced in the Cayman Proceeding.

Mrs. Jing Cao Mo is Mr. Mo's spouse, as well as an officer of Research Center for Natural Conservation ("RCNC") and New York Military Academy ("NYMA"), and a director of Next Decade Investments Limited ("Next Decade"), a privately held Mo family entity that has engaged in some of the transactions that are alleged to constitute self-dealing and alleged to have resulted in gains of over $38 million to Next Decade and another Mo family entity. As noted below, Mrs. Mo maintains a residence in Henderson, Nevada.[2]

In sum, Mrs. Mo is in a position to furnish information for use in the Cayman Proceeding, and it is appropriate that Section 1782 discovery be granted.

## FACTUAL BACKGROUND

### A.      RELEVANT PARTIES AND NON-PARTIES

1.      Evenstar

Evenstar Master Fund SPC is an exempted segregated portfolio company incorporated under the laws of the Cayman Islands; the sole portfolio within the fund is Evenstar

---

[2]    It is understood that Mrs. Mo also owns an apartment in New York, New York. Evenstar previously sought and obtained relief from the United States District Court for the Southern District of New York pursuant to Section 1782 permitting service of a subpoena on her in that jurisdiction. It appears, however, that she now is resident in this jurisdiction. (See *infra* at 9.)

4

Master Sub-Fund I Segregated Portfolio, which was launched in 2005.  Evenstar Special

Situations Limited is a limited liability company also incorporated under the laws of the Cayman

Islands.  Headquartered in Hong Kong, Evenstar has made substantial investments in Mainland

China's real estate and internet sectors.  (*See* Nov. 16, 2020 Amended Petition as filed in Cayman

Proceeding, O'Driscoll Decl. Ex. B-2 ¶ 18 (hereinafter "Cayman Amended Petition" or "Cayman

Am. Pet.").)

2.      Fang Holdings

This Application, and the litigation in the Cayman Islands, both relate to Fang.

Formerly known as SouFun Holdings Limited, Fang is a company incorporated under the laws of

the British Virgin Islands, which continued in the Cayman Islands with registered number

136949.  Fang's principal place of business is in Beijing, Mainland China, where it purportedly

operates the country's largest real estate internet listing and search portal and provides a variety

of ancillary services, including marketing, listing, lead generation, e-commerce and financial

services.  (*See* Cayman Am. Pet. ¶¶ 8-12.)

Fang's securities are listed on the New York Stock Exchange as American

Depositary Shares ("ADS") under the ticker symbol SFUN.  Due to its shares being publicly

traded in the United States, Fang is required to make periodic filings with the United States

Securities and Exchange Commission.  (*Id.* ¶ 10.)

3.      Vincent Mo

Fang's Chairman, CEO, and controlling shareholder is Mr. Vincent Mo.  SEC

filings by Fang indicate that Mr. Mo, and/or companies owned by him or his family, controls

approximately 71.7% of voting interests in Fang.  (*Id.* ¶¶ 15, 33, 45.)  In addition, Mr. Mo also

owns and controls a group of hotel companies, apparently held through Upsky Enterprises Limited

("Upsky Enterprises"), a company incorporated in the British Virgin Islands.  (*Id.* ¶¶ 104-05.)

Upsky Enterprises appears to own ten portfolio hotels (seven in Mainland China, and three in the

United States).

### 4.    Jing Cao Mo (Mrs. Mo)

Mrs. Mo is the spouse of Mr. Mo.  She owns a residence (and is believed to reside)

at 3 Pine Hollow Drive in Henderson, Nevada.  (*See* Faust Decl. Ex. A-3 (Deed of lot in Anthem

Country Club in Henderson, Nevada); Faust Decl. Ex. A-5 (Clark County Assessor's Record

indicating the address of lot owned by Jing Cao is 3 Pine Hollow Drive in Henderson, Nevada).)

### B.    The Foreign Proceedings that are the Subject of this Application

### 1.    Evenstar's Investment in Fang

Evenstar is a long-term investor in Fang.  It first purchased ADSs in Fang in

December 2014.  (Cayman Am. Pet. ¶ 14.)  Evenstar has taken steps to convert the balance of its

ADSs into Class A Ordinary Shares, and the conversion in question has been completed, subject

to validation by the Grand Court of the Cayman Islands.  (*Id.* ¶¶ 5-8.)[3]

### 2.    The Cayman Proceeding:  Evenstar Requests that Fang Be Subject to a Just and Equitable Winding Up Order

On November 12, 2020, Evenstar commenced the Cayman Proceeding before the

Grand Court of the Cayman Islands, seeking an order that Fang be wound up on "just and

equitable" grounds, and/or seeking further and alternative relief.  (*See* O'Driscoll Decl. ¶¶ 11, 15;

Cayman Am. Pet. ¶¶ 266-74.)  Evenstar contends that such relief is justified, among other things,

by a pattern of self-dealing in which the assets of Fang have been appropriated for the benefit of

Mr. Mo (or entities owned or controlled by him, including Upsky Enterprises).  (Cayman Am.

---

[3]    As described more fully in the Cayman Amended Petition, the conversion process was not straightforward, as Fang failed to honor Evenstar's conversion request, and Evenstar had no choice but to resort to the Grand Court of the Cayman Islands for an order permitting the ADSs to be converted.  (Cayman Am. Pet. ¶¶ 214-15.)

6

Pet. ¶¶ 103-208.)  Other serious allegations of self-dealing, undisclosed related party transactions and breach of fiduciary duty are made against Mr. Mo, as majority owner of Fang.  (*Id.* ¶¶ 47-102.)

As detailed in the Cayman Amended Petition, it is alleged that two companies owned by Fang private family trusts, Next Decade Investments Limited and Media Partner Technology Limited, entered into a December 24, 2019 "Sale and Purchase Agreement" with Fang by which Fang was empowered to purchase up to 15 million ordinary shares held by Next Decade/Media Partner in China Index Holdings Limited ("CIH"), another publicly-traded company that was spun off from Fang in June 2019.  (*See* Cayman Am. Pet. ¶¶ 37, 66-67.) Fang's "option" to purchase CIH shares was apparently exercised in two tranches, one on December 27, 2019 and one on June 23, 2020.  (*See id.* ¶¶ 68, 80.)

On both occasions that Fang made these purchases, they resulted in very significant gains to Next Decade/Media Partner – approximately US$13.6 million on the first tranche and US$25.39 million on the second tranche.  (*See id.* ¶¶ 70, 82.)  Notably, the resultant gains to Mr. Mo from the first tranche were characterized by Fang as "compensation expenses." (*See id.* ¶ 70.)  Consequently, as noted in the Cayman Amended Petition, "Fang's executive compensation for 2019 increased by 1,687.5% compared to the aggregate executive compensation paid for 2018."  (*Id.* ¶ 74.)

Evenstar further alleges that, in the period prior to the second tranche option exercise (i.e. in mid-2020), "Fang's management engaged in market manipulation of CIH's ADS price with a view to artificially inflating the market price prior to the Second Option Exercise in order to disguise the true extent of the immediate but unrealised loss to Fang."  (*Id.* ¶ 83; *see also id* ¶¶ 84-90.)  The Cayman Amended Petition seeks, among other things, that a liquidator be

appointed to Fang for the purposes of winding it up.  (*Id.* (Prayer for Relief).)  In its discretion, the court may order other relief (such as a buyout of the minority interests) be granted.

The Cayman Amended Petition (and related summons for directions) has been served on Fang.  While Mr Mo initially took no steps to enter an appearance and failed to respond to correspondence requesting that he accept service by email, he has since instructed counsel to act on his behalf in the Cayman proceedings (*See* O'Driscoll Decl. ¶ 13).  The case has been assigned to Chief Justice Smellie of the Cayman Grand Court, and hearings were held on December 4 and 21, 2020 and a further hearing is scheduled to take place on December 24.  (*Id.* ¶¶ 10, 13-14.)

### 3. Allegations in the Cayman Proceeding Concerning Next Decade – and U.S. Properties

The Cayman Amended Petition identifies a number of transactions involving Next Decade, a British Virgin Islands company that, according to SEC filings, is owned or controlled by Mr. Mo through a family trust.  (*See* Cayman Am. Pet.  ¶ 37.)  Mrs. Mo is a director of Next Decade.  (Faust Decl. Ex. A-6 (SouFun Holdings Limited SEC Form 13D).)  As noted above, the Cayman Amended Petition alleges that  Next Decade engaged in options transactions with Fang that resulted in in very significant gains to Next Decade/Media Partner.  (*See supra* at 6-7.)

The Cayman Amended Petition identifies numerous other transactions involving Fang or Mo-linked entities that, in the circumstances, require examination, including:

- RCNC's $6 million purchase in 2011 of Arden House, a large mansion in Harriman, New York.  RCNC is a non-profit corporation headed by Mr. Mo.  (*See* Cayman Am. Pet. ¶¶ 182-85.)  RCNC has stated that it has entered into large mortgage loans with "Upsky," a privately owned hotel company linked to Mr. Mo and/or his family.  (*See id.* ¶ 190)  At the same time, in running Arden House, RCNC has utilized Fang personnel, email addresses and website resources (*see id.* ¶¶ 190-91); moreover, Mr. Mo and members of his family have made personal use of Arden House.  (*See id.* ¶ 188.)  These concerns are compounded

by RCNC's apparent financial links with Upsky.[4]  This warrants further inquiry into the source of RCNC's capital and to examine the extent to which it has drawn upon Fang resources.  (*See id.* ¶ 190.)

- RCNC's $15.3 million purchase in 2015 of NYMA, a boarding school in Cornwall-upon-Hudson, New York.  (*See id.* ¶¶ 192-93.)  Since this acquisition, Mr. Mo and his wife, Ms. Mo, have become trustees of NYMA; indeed, Mrs. Mo is President.  (*See id.* ¶ 194.)  NYMA has received loans from both Upsky and Mr. Mo, including a mortgage loan from Upsky.  (*See id.* ¶¶ 196-98.)

- RCNC's $17.35 million purchase in 2017 of Briarcliff College, a vacant campus (and former girls' school) in Westchester County.  (*See id.* ¶ 195.)

As further noted below, certain of these above transactions are the subject of the discovery that Evenstar currently seeks.

## C.     **The Prior SDNY Application**

On November 18, 2020, in Proceedings No. 7:20-mc-00418-CS (S.D.N.Y.), Evenstar sought leave to issue subpoenas on Mrs. Mo (and certain other recipients), on the basis (as believed at the time) that she was resident in Manhattan.  On November 30, 2020, Judge Cathy Seibert of the Southern District of New York granted relief as to each proposed subpoena recipient, including Mrs. Mo.  (*See* Faust Decl. Ex. A-7 (Order of Judge Cathy Seibert).)  Efforts were made to serve Mrs. Mo at addresses believed to be associated with her, but without success.[5]  Petitioners now believe that Mrs. Mo is, in actuality, resident in this jurisdiction at the Henderson address referred to above.

## **ARGUMENT**

## I.     **LEGAL FRAMEWORK**

## A.     **Section 1782 Standards**

---

[4]   Certain transactions involving Upsky entities were the subject of separate Section 1782 applications in the United States District Courts for the Northern District of California and the Eastern District of New York.  The *ex parte* applications in those cases were granted and the Upsky entities have been served.  In addition, and pursuant to the SDNY court's direction, Fang and Mr. Mo received advance copies of the SDNY papers prior to service being made (and/or attempted) on the subpoena recipients in that district.

[5]   Those addresses included 112 West 56th Street Apt. 21S, New York, NY 10019 and 60 East 55th Street Apt 14B New York, NY 10022.  Mrs. Mo was not present at any of those addresses, though service was attempted multiple times.  Another address now seems to have been associated with a different "Jing Cao."

9

28 U.S.C. § 1782 authorizes United States District Courts to grant discovery for use in a pending or reasonably contemplated foreign proceeding.  *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 259 (2004).  The statute states, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person.

28 U.S.C. § 1782(a).

Accordingly, a Section 1782 application must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides or is found in this District, (2) the discovery is for use in a proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  *Medeiros v. Int'l Game Tech.*, No. 2:16-cv-00877-JAD-NJK, 2016 WL 1611591, at * 2 (D. Nev. Apr. 22, 2016).

Once the statutory requirements are satisfied, courts may then consider certain discretionary factors in deciding whether to grant a Section 1782 application, including: (1) whether the discovery is sought from a participant in the foreign proceeding who is accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the tribunal to U.S. federal court assistance; (3) whether the discovery request conceals an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States; and (4) whether the discovery requests are unduly intrusive or burdensome.  *Id.*, at *2; *see also Intel*, 542 U.S. at 264-65.

Both the Supreme Court and the Ninth Circuit have acknowledged that Congress intended Section 1782 to be a liberal avenue for discovery in aid of foreign and international proceedings.  *See, e.g., Intel*, 542 U.S. at 247-48; *Advanced Micro Devices, Inc. v. Intel Corp.*,

292 F.3d 664, 669 (9th Cir. 2002), *aff'd*, 542 U.S. 241 (2004) ("[A]llowance of liberal discovery seems entirely consistent with the twin aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.").

Here, Evenstar satisfies the three statutory requirements of Section 1782; moreover, the discretionary factors favor taking discovery from Mrs. Mo

### B.  The Power of the Court to Proceed *Ex Parte*

Section 1782 applications are routinely granted *ex parte*.  Granting this Application on an *ex parte* basis will not impinge upon Mrs. Mo's due process rights, as they may subsequently move to quash the subpoenas and/or vacate the order granting the Application.  *See, e.g., In re Application of O'Keefe*, No. 2:14-cv-01518-RFB-CWH, 2016 WL 2771696, at *2 (D. Nev. Apr. 4, 2016) ("If a district court grants a § 1782 application, the subpoenaed party can move to quash the subpoena, but bears the burden of persuasion in the course of civil litigation."); *see also In re Republic of Ecuador*, No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010) ("[I]t is common for the process of presenting the request to a court and to obtain the order authorizing discovery to be conducted ex parte.  Such ex parte applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.") (internal quotations, alterations, and citations omitted).

## II.  THE APPLICATION MEETS SECTION 1782'S STATUTORY REQUIREMENTS

### A.  Mrs. Mo Is "Found" Within This District

The evidence concerning the Henderson, Nevada address indicates that Mrs. Mo is a resident who is "found" in this District.  *See In re Judicial Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14–cv–0797–GMN–NJK, 2014 WL 7706908, at * 2 (D.

Nev. Jun. 4, 2014) (individual was deemed to be "found" in the district when the petitioner presented evidence that the individual resides in the district), *reconsideration denied*, No. 2:14–cv–00797–GMN–NJK, 2015 WL 3439103 (D. Nev. May 28, 2015); *see also* 28 U.S.C. § 1782 ("The district court of the district in which a person *resides* or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." (emphasis added)).  Therefore, Mrs. Mo satisfies the first statutory requirement of Section 1782 because she resides in this District.

### B.     The Discovery Sought Is For "Use" In A Foreign Proceeding

There is no question that the Cayman Proceeding is a foreign proceeding for purposes of Section 1782.  *See, e.g., In re Application of Savan Magic*, No. 2:17–cv–01689–JCM–NJK, 2017 WL 6454240, at *3 (D. Nev. Dec. 18, 2017) (the statutory requirements for a § 1782 application were met where application was sought in aid of litigation in Singapore).

Having commenced the Cayman Proceeding against Fang, Evenstar undeniably satisfies the "use" requirement in Section 1782.  *See Macquarie Bank*, 2014 WL 7706908, at *2 (concluding that discovery intended for use in "pending and prospective actions" in a foreign court satisfied the second statutory factor).  Evenstar bears the burden of proof in the Cayman Proceeding, and Cayman courts are receptive, in principle, to receiving documentary and other evidence obtained in Section 1782 actions in aid of domestic Cayman proceedings.  (O'Driscoll Decl. ¶ 27-28.)  Further, an applicant is not required to prove that the information would be discoverable or even admissible in the foreign proceeding.  *See Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348, at *4 (N.D. Cal. Jan. 13, 2009) ("there is no requirement under § 1782 that the requested information would be discoverable"); *Qualcomm Inc.*, No. 18-MC-80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018) ("[F]ederal

12

courts, in responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions of foreign law relating to . . . the admissibility before such tribunals of the testimony or materials sought.") (internal quotations and citations omitted, alterations in original).

Moreover, Mrs. Mo appears to possess relevant information which is material to the Cayman Proceeding and appears to have been involved in at least some of the transactions identified in the Cayman Amended Petition. The Proposed Subpoenas thus seek documents and testimony that is pertinent to the issues in the Cayman Proceeding.

## C. The Evenstar Entities Are "Interested Persons"

Lastly, Section 1782 requires an applicant to show that it possesses a reasonable interest in the foreign proceeding. Here, there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256 (second alteration in original); *see also Macquarie Bank*, 2014 WL 7706908, at *2 ("Petitioner is a party to the [foreign] proceedings . . . and therefore qualifies as an 'interested person.'" (internal citation omitted)). Both Evenstar entities are petitioners in the Cayman Proceeding, and thus each qualifies as an "interested person" pursuant to Section 1782.

## III. THE SECTION 1782 DISCRETIONARY FACTORS WEIGH IN FAVOR OF PERMITTING THE PROPOSED DISCOVERY

Once a petitioner has satisfied the statutory requirements of Section 1782, courts then turn to whether the four discretionary *Intel* factors have been met. *See Savan Magic*, 2017 WL 6454240, at *2 ("If the Court has determined that it has the statutory authority to grant the request, then it turns to whether it should exercise its discretion to do so.").

The proposed discovery consists of a document production subpoena, as well as a deposition subpoena, each seeking discovery pursuant to the Federal Rules of Civil Procedure (as

permitted by Section 1782).  The document production subpoena seeks information pertaining to

the issues raised in the Cayman Amended Petition, including:  (i) the dealings between Next

Decade and Fang; and (ii) the source of funds for the RCNC/NYMA transactions and the

relationship of these entities with other companies controlled by Mr. Mo, including both Fang and

the "Upsky" companies.

Each of the discretionary factors warrants the issue of these subpoenas.  First, Mrs.

Mo is not a party to the Cayman Proceeding and thus is not subject to its discovery orders.  *Cf.*

*Intel* 542 U.S. at 264.  Accordingly, in the absence of relief pursuant to Section 1782, third-party

discovery from Mrs. Mo may not be available to Evenstar in the Cayman action.  *See Medeiros*,

2016 WL 1611591, at *3 ("Respondent is not a party to the underlying Brazilian criminal

proceeding, rendering the need for assistance from this Court more readily apparent.").

The second *Intel* factor is whether a foreign tribunal would be receptive to

evidence obtained pursuant to a 1782 application.  *See id.* ("Second, the Court analyzes the

nature of the foreign tribunal, the character of the proceedings underway abroad, and the

receptivity of the foreign court.").  Courts within this Circuit often presume that foreign tribunals

will be receptive to evidence obtained in the United States.  *See, e.g.*, *id.* (finding this factor in

favor of granting the application when "[t]here [wa]s no indication that the Brazilian court would

be unreceptive to such discovery"); *In re Mak*, No. C 12-80118 MISC SI, 2012 WL 1965896, at

*2 (N.D. Cal. May 31, 2012) ("The Hong Kong court would presumably be receptive to the

discovery request as it concerns information essential to obtaining accurate facts that bear on the

divorce proceeding.").  Moreover, courts should only deny a 1782 application if there is

"*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of

section 1782."  *In re Ex Parte Application by Varian Med. Sys. Int'l AG*, No. 16-MC-80048-

14

MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (emphasis added) (internal quotations and citations omitted).  That presumption is satisfied here and is buttressed by the accompanying declaration from Evenstar's Cayman counsel explaining that, in a just and equitable winding up proceeding, the court has discretion to admit documents obtained through 1782 action, and to evaluate and potentially admit testimony received through Section 1782.  (O'Driscoll Decl. ¶ 27-28.)

The third *Intel* factor is "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  The discovery sought by Evenstar does not attempt to evade any proof-gathering restrictions, nor does it violate public policy.  Evenstar's requests do not seek proprietary information, state secrets or attorney-client communications.  If Mrs. Mo were to reasonably believe that an individual document requests raise such concerns, Evenstar is willing to consider accommodating such concerns, such as stipulating to a protective order.  *See Varian*, 2016 WL 1161568, at *6 ("the Court is willing to consider proposed protective orders to prevent the misuse of this information").

The last *Intel* factor asks whether the discovery requests are "unduly intrusive or burdensome."  *Intel,* 542 U.S. at 265.  This standard is identical to the standard under U.S. domestic civil litigation under the Federal Rules of Civil Procedure.  *See In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998) ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute.").  Each of Evenstar's requests is narrowly tailored and directly relevant to issues raised in the Cayman Proceeding.  Accordingly, whatever burden is imposed upon Mrs. Mo is reasonable and proportionate given the circumstances.

The Cayman Proceeding raises serious allegations of corporate malfeasance and misappropriation of Fang's corporate funds to the benefit of Mr. Mo, his family, and entities controlled by him.  Accordingly, relative to the focused requests and information sought by Evenstar, the information sought from Mrs. Mo is potentially important.

## **CONCLUSION**

For the foregoing reasons, Evenstar respectfully asks this Court to (a) grant the Application for an Order to Conduct Discovery; (b) enter the Proposed Order attached to the Faust Declaration as Exhibit A-1; and (c) authorize Evenstar, pursuant to 28 U.S.C. § 1782, to issue and serve the Subpoenas attached to the Faust Declaration as Exhibit A-2.

December 24, 2020                              Respectfully submitted,


_/s/ Steve Morris_
Steve Morris, Bar No. 1543
Rosa Solis-Rainey, Bar No. 7921
MORRIS LAW GROUP
801 S. Rancho Drive Suite B4
Las Vegas, Nevada 89106
sm@morrislawgroup.com
rsr@morrislawgroup.com

Timothy G. Nelson (_pro hac vice application forthcoming_)
Eva Y. Chan  (_pro hac vice application forthcoming_)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
timothy.g.nelson@skadden.com
eva.chan@skadden.com

Attorneys for Applicants
EVENSTAR MASTER FUND SPC and
EVENSTAR SPECIAL SITUATIONS LIMITED

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28