1   J. BRUCE ALVERSON, ESQ.
    Nevada Bar No. 1339
2   KARIE N. WILSON, ESQ.
    Nevada Bar No. 7957
3   **ALVERSON TAYLOR & SANDERS**
    6605 Grand Montecito Pkwy, Ste. 200
4   Las Vegas, NV 89149
    702-384-7000 Phone
5   702-385-7000 Fax

6   MATTHEW G. COOGAN (*pro hac vice* application pending)
    mcoogan@lswlaw.com
7   JOHN S. SIFFERT (*pro hac vice* application pending)
    jsiffert@lswlaw.com
8   BRICE JASTROW (*pro hac vice* application pending)
    bjastrow@lswlaw.com
9   LANKLER SIFFERT & WOHL LLP
    500 Fifth Avenue
10  New York, NY 10110
    (212) 921-8399

11
    *Attorneys for Respondent Jing Cao*
12

13              **UNITED STATES DISTRICT COURT**
                   **DISTRICT OF NEVADA**
14

15  *In re Ex Parte* Application of          │  Case No. 2:20-cv-02333-KJD-BNW
                                             │
16  EVENSTAR MASTER FUND SPC for and on      │
    Behalf of EVENSTAR MASTER SUB-FUND       │
17  I SEGRAGATED PORTFOLIO; and              │  **RESPONDENT JING CAO'S**
    EVENSTAR SPECIAL SITUATIONS              │  **MEMORANDUM OF POINTS AND**
18  LIMITED,                                 │  **AUTHORITIES IN OPPOSITION TO**
                                             │  **PETITIONER'S MOTION TO COMPEL**
19              Applicants,                  │  **COMPLIANCE WITH SUBPOENAS**
                                             │  ***DUCES TECUM* AND *AD***
20  For an Order Pursuant to 28 U.S.C. 1782 to │  ***TESTIFICANDUM***
    Obtain Discovery from JING CAO MO for    │
21  Use in a Foreign Proceeding              │

22  _____ │

23

24

                            1

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

**PRELIMINARY STATEMENT**

Petitioners Evenstar Master Fund SPC and Evenstar Special Situations Limited (together, "Evenstar") have moved to compel Jing Cao, a non-party to the underlying Cayman Islands proceedings and the wife of Vincent Tianquan Mo, a party to the Cayman case, to produce third-party discovery pursuant to 28 U.S.C. § 1782. The motion should be denied.

*First*, as we informed Evenstar's counsel, Ms. Cao possesses no documents that are responsive to any of the requests in Evenstar's § 1782 subpoenas (the "Subpoenas").

*Second*, Ms. Cao has no non-privileged testimony to provide on any topics identified in the Subpoenas.

*Third*, to the extent that the Subpoenas seek any discovery potentially relevant to the Cayman proceedings, the same discovery easily can and should be obtained directly from the parties to the Cayman proceedings rather than from third-party Ms. Cao.

*Fourth*, the Subpoenas are vastly overbroad and unduly intrusive. They run far afield from issues that Evenstar has raised in the Cayman proceedings and seek irrelevant and confidential financial information related to three entities - BVI holding company Next Decade Investments Limited ("Next Decade") and New York not-for-profit corporations Research Center on Natural Conservation Inc. ("RCNC") and New York Military Academy ("NYMA") - that are neither parties to the Cayman proceedings nor before this Court.

*Fifth*, Evenstar's motion in this Court is substantially duplicative of an application that Evenstar is pursuing in the Southern District of New York, where it seeks to compel the same discovery related to RCNC and NYMA that it seeks to compel from Ms. Cao here. Inexplicably, Evenstar has not disclosed its duplicative motions to either this Court or the Southern District of New York.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

ALVERSON TAYLOR & SANDERS

LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

*Sixth*, in the alternative, the Subpoenas should be adjourned until after responsive pleadings are filed in the Cayman proceedings and issue has been joined. As set forth in the accompanying declaration of Cayman counsel, under Cayman law, the appropriate measure of discovery can only be determined after the close of pleadings, which has not occurred in the Cayman proceedings.

Despite repeated requests in our meet-and-confer discussions and subsequent correspondence, Evenstar has not articulated any prejudice to postponing its motion to compel or any urgency of the relief it requests. We urged Evenstar's counsel to delay any discovery until after pending settlement discussions in the Cayman proceedings conclude. Evenstar refused to consent to an adjournment. The next Cayman court date is set for May 12, when the parties will either have reached agreement, failed to reach agreement, or requested a further adjournment to continue their settlement discussions. In any event, if the Cayman settlement efforts fail, Evenstar's requests for § 1782 discovery should await the Cayman court's directions as to what, if any, discovery it will need in the case, including from Ms. Cao.

Evenstar also refused to delay its motion to compel to allow us time to investigate what documents Ms. Cao actually possesses. Evenstar filed its motion more than a week before the return date of its document Subpoena. Since then, we confirmed with Ms. Cao, and informed Evenstar's counsel, that Ms. Cao does not possess any responsive documents or have any non-privileged testimony to provide. Under these circumstances, Federal Rule of Civil Procedure 45(d)(1) and case law would support the position that Evenstar should have taken the reasonable step of withdrawing or narrowing its motion before Ms. Cao's responding papers were due in order to avoid imposing unnecessary burden and expense on Ms. Cao. See, e.g., Sec. & Exch. Comm'n v. Schooler, 2016 WL 6821079, at *5 (D. Nev. Nov. 17, 2016); In re Fischer Advanced Composite Components AG, 2008 WL 5210839, at *3–*5 (W.D. Wash. Dec. 11, 2008). Instead,

**ALVERSON TAYLOR & SANDERS**
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

Evenstar declined our requests to withdraw the pending motion to compel, telling us that they did not believe our representations about Ms. Cao's documents and knowledge, and required us to file these papers in opposition to the motion and to file a separate motion to quash the Subpoenas.[1]

Evenstar's aggressive motion practice is of a piece with its broad campaign of burdensome third-party discovery demands in the Southern District of New York, the Eastern District of New York, and the Northern District of California against Mr. Mo's outside business and charitable interests in the United States. The ostensible purpose of obtaining leave to serve subpoenas in the United States was to aid the Cayman court in the underlying proceedings. However, issue has not been joined in the Cayman litigation and the proceedings have been adjourned voluntarily for over four months to allow the parties to resolve a preliminary application presented by Evenstar (and potentially the entire Cayman proceedings) and while the parties discuss settlement terms. The motion to compel therefore does not appear directed at aiding the Cayman court as much as enhancing Evenstar's negotiating position - something not contemplated by § 1782.

## STATEMENT OF FACTS[2]

In the underlying Cayman litigation, Evenstar seeks a court order appointing joint official liquidators to wind up Fang's business and liquidate its assets on the ground that Mr. Mo, who

---

[1] Under the parties' stipulated briefing schedule "so ordered" by the Court on April 23, 2021 (ECF No. 24), in addition to this opposition to Evenstar's motion to compel, Ms. Cao has filed a motion to quash Evenstar's Subpoenas (ECF No. 35).

[2] In support of Ms. Cao's opposition to Evenstar's motion to compel, we submit herewith: (i) a Declaration of Jing Cao, dated May 7, 2021 (the "Cao Declaration") (ECF No. 32); (ii) a Declaration of Hector Robinson QC, dated May 7, 2021 (the "Robinson Declaration") (ECF No. 33); and (iii) a Declaration of Matthew G. Coogan, dated May 7, 2021 (the "Coogan Declaration") (ECF No. 34).

1   owns a controlling interest in Fang, allegedly engaged in self-dealing by diverting Fang assets to

2   companies that he controls. As explained more fully below, since December 24, 2020, all

3   proceedings in the Cayman case have been stayed while the parties discuss resolving the need for

4   a provisional liquidator and consider the Cayman court's views that the parties should explore a

5   resolution of the entire matter. (Robinson Decl. ¶¶ 20–21, Ex. 6 (12/24/20 Tr.) at 15.)

6   **I.      RELEVANT ENTITIES AND INDIVIDUALS**

7          **A.      Parties to the Cayman Islands Proceedings (Fang, Vincent Tianquan Mo,
                     and Evenstar)**

8          Fang Holdings Limited ("Fang") is a Cayman Islands company that was founded in 1999

9   by Vincent Tianquan Mo. Fang operates a leading real estate internet portal in China. It

10  maintains offices throughout China, providing marketing, advertisement, listing, lead generation,

11  financing, and e-commerce services to business and retail customers across the Chinese real-

12  estate industry. Originally founded as a private company, Fang went public in 2010. Mr. Mo

13  currently serves as the company's executive chairman.

14         Evenstar is a Cayman Islands investment company. (Robinson Decl. Ex. 1 (November

15  16, 2020 Amended Winding Up Petition) ¶¶ 1, 3.) In December 2014, Evenstar began investing

16  in Fang. (Id. ¶ 17.) Evenstar currently holds approximately 17% of Fang's outstanding shares.

17  (Id. ¶ 7.)

18         **B.      Respondent Jing Cao**

19         Jing Cao has been married to Mr. Mo for approximately 30 years. (Cao Decl. ¶ 1.) She

20  resides in Las Vegas, Nevada, and has never been involved in Fang's business. (Id. ¶¶ 1, 4.) As

21  explained below, Ms. Cao is a director of two holding companies owned by her family's trusts.

22  She also serves as a director of RCNC, a New York not-for-profit corporation. She is not a

23  defendant in the Cayman action.

24

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

5

**ALVERSON TAYLOR & SANDERS**
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

### C.     Upsky Group

In addition to his role as executive chairman of Fang, Mr. Mo owns a separate business called Upsky, which operates hotel and resort properties in China and the United States.

Ms. Cao has no role in Upsky's businesses. (Cao Decl. ¶ 5.)

### D.     Wall Street Global Training, Inc.

Wall Street Global Training, Inc., ("WSGTC") is a New York not-for-profit corporation. As disclosed in Fang's public SEC filings, WSGTC provided training services to various Fang employees during the years 2011, 2012, and 2013, before Evenstar became a Fang shareholder.

Ms. Cao has no role with WSGTC and has never participated in WSGTC's business. (Cao Decl. ¶ 6.) WSGTC is not a defendant in the Cayman action.

### E.     Research Center on Natural Conservation Inc.

RCNC is a New York not-for-profit corporation formed by Mr. Mo in 2011. Since then, RCNC has acquired several properties, including a parcel that it currently leases to NYMA. RCNC does not have any relationship with Fang and, to Ms. Cao's knowledge, has never engaged in any transaction with Fang. (Cao Decl. ¶ 9.)

Ms. Cao serves as a director of RCNC, as does Mr. Mo. (Id.) RCNC is not a defendant in the Cayman action.

### F.     New York Military Academy

NYMA is a New York not-for-profit corporation that runs a historic military boarding school in Cornwall-on-Hudson, New York. NYMA leases the property on which its campus resides from RCNC. (Cao Decl. ¶ 8.)

Mr. Mo is a member of NYMA's board of trustees. Ms. Cao is not, though she served as a trustee from approximately 2015–2019. (Id. ¶ 7.) NYMA is not a defendant in the Cayman action.

**G.     Next Decade Investments Limited and Media Partner Technology Limited**

Next Decade and Media Partner Technology Limited ("Media Partner") are passive holding companies organized in the British Virgin Islands. (Cao Decl. ¶¶ 10, 12.) They are held by irrevocable trusts for the benefit of Ms. Cao and her children. (Id.) Ms. Cao is a director of both companies, neither of which is a defendant in the Cayman action. (Id. ¶¶ 11, 13.)

**II.     THE CAYMAN ISLANDS LITIGATION**

On November 12, 2020, Evenstar filed a winding-up petition in the Grand Court of the Cayman Islands against Fang and Mr. Mo. On November 16, 2020, it filed an amended petition (the "Amended Petition"). (Robinson Decl., Ex. 1.) The Amended Petition seeks to appoint official liquidators to wind up and liquidate Fang, alleging that Mr. Mo caused Fang to enter into four sets of transactions that benefited himself and his interests at the expense of Evenstar and other minority shareholders:

(i)     Fang's purchase of securities in China Index Holdings, a former subsidiary of Fang, from Next Decade and Media Partner, allegedly at a premium, thereby causing significant losses to Fang (the "CIH Transaction") (Robinson Decl., Ex. 1 (Am. Pet.) ¶¶ 65–102);

(ii)    Fang's sale to and subsequent repurchase from IDG Alternative Global Limited of a $200 million convertible note (id. ¶¶ 47–58);

(iii)   Fang's sale to and subsequent repurchase from Safari Group Holdings Limited and Safari Group CB Holdings Limited of $100 million in convertible notes (id. ¶¶ 59–64); and

(iv)    various alleged and suspected uses, transfers, and intermingling of Fang's real estate and other assets for the benefit of Mr. Mo's separate businesses, including his Upsky hotels in China (id. ¶¶ 103–208).

Also on November 12, 2020, Evenstar filed with the Cayman court a "Summons for Directions," a submission required under Cayman rules in which the petitioner requests directions from the court as to the management and determination of the petition, including, for example, "discovery and inspection of documents" and "oral discovery." (Robinson Decl. ¶ 9.)

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

In its Summons for Directions, Evenstar did not request any provision for documentary or oral

discovery from either Fang or Mr. Mo. (Id. ¶ 11.) Under Cayman procedural rules, by failing to

request discovery in its Summons for Directions, Evenstar can be deemed by the Cayman court

to have taken the position that discovery is not necessary for resolution of its petition. (Id.)

On December 4, 2020, the Cayman court held a "Directions Hearing" on Evenstar's

Summons for Directions. (Id. ¶ 12.) Evenstar again did not request any opportunity to take

discovery from Fang or Mr. Mo. (Id. ¶ 13.) At the hearing, the Cayman court directed Evenstar

to make an application for the appointment of provisional liquidators, which Evenstar

subsequently did. (Id. ¶¶ 13, 17.) After Evenstar filed its application, Fang and Mr. Mo offered

various undertakings in an effort to resolve it without having to appoint provisional liquidators.

(Id. ¶ 19.)

On December 21 and 24, 2020, having received Fang's and Mr. Mo's proposed

undertakings, the Cayman court held two conferences at which it expressed its desire for the

parties to reach an amicable resolution of Evenstar's application for provisional liquidators and

potentially the entire substantive proceedings. (E.g., Robinson Decl. ¶ 20, Ex. 5 (12/21/20 Tr.) at

32 ("I discerned something of an olive branch being extended as well, the possibility of an

agreement, an agreed settlement of this dispute, which, to my mind, is perhaps the most

attractive thing to contemplate when I'm contemplating an adjournment."), Ex. 6 (12/24/20 Tr.)

at 15 ("I do emphasize that the petitioner with the appropriate undertakings in place perhaps

would be best advised if its concerns can be addressed in the long run by the restructuring and

the restructuring of the board itself, as we have seen, best advised to reconsider its applications -

the application and the petition, for that matter.").) At the parties' request, the court then

adjourned the action to enable the parties to discuss settlement. Settlement discussions have been

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

ongoing since, and the court has continued to hold the Cayman proceedings in abeyance at the parties' requests. The next conference is currently set for May 12, 2021. (Robinson Decl. ¶ 14.)

The Cayman proceedings have thus been in stasis since December 2020. No responsive pleadings have been filed. No issue has been joined. No discovery has been requested, scheduled, or discussed. In order for such steps to occur, the Cayman court would need to hold another directions hearing, at which the parties would request directions from the court as to a schedule for and, where applicable, the scope of responsive pleadings, discovery, and trial. (Id. ¶ 16.) Under Cayman procedural rules, it is only after the "close of pleadings" that the court can determine the "matters in question," which is the touchstone metric for permissible discovery under Cayman law. (Id. ¶ 22.) And, as noted, Evenstar's omission of any request for discovery directions in its November 12, 2020 summons to the Cayman court can be deemed a concession that no discovery is warranted. (Id. ¶ 11.)

## III. EVENSTAR'S AGGRESSIVE CAMPAIGN OF BURDENSOME THIRD-PARTY DISCOVERY AGAINST MR. MO'S FAMILY AND OUTSIDE BUSINESS AND CHARITABLE INTERESTS IN THE UNITED STATES

Notwithstanding the Cayman court's adjournment, the ongoing settlement discussions, and Evenstar's failure to request any discovery in the Cayman action, Evenstar pursues a broad campaign of third-party discovery under 28 U.S.C. § 1782 against Mr. Mo's family and outside business and charitable interests in the United States.

### A. Subpoenas to Upsky, WSGTC, RCNC, and NYMA (Southern District of New York, Eastern District of New York, and Northern District of California)

In December 2020, Evenstar served document and deposition subpoenas on four of Mr. Mo's Upsky hotel businesses in the Northern District of California and the Eastern District of New York, and on WSGTC, RCNC, and NYMA in the Southern District of New York. As counsel for these entities in addition to Ms. Cao, we met and conferred with Evenstar's counsel regarding those subpoenas. (Coogan Decl. ¶¶ 3–5.) At Evenstar's request, we conducted a search

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

of approximately 90 Fang subsidiaries and confirmed that they had no undisclosed transactions with these subpoena recipients. (Id. ¶ 5(b).) Nevertheless, Evenstar demanded that these entities produce broad categories of documents and deposition testimony unrelated to the Cayman litigation after the Cayman court adjourned the proceedings. (Id. ¶ 5(k).) On April 9, the day after Evenstar filed its motion in this Court, Evenstar filed a pre-motion letter in the Southern District of New York seeking to compel RCNC and NYMA to produce much of the same documents and deposition testimony as it now seeks in this Court. (Id. ¶ 5(n).) That court has scheduled a conference to address Evenstar's application on May 13, 2021.

**B.      Subpoenas to Ms. Cao (District of Nevada)**

On January 14, 2021, this Court issued an order granting Evenstar's December 24, 2020 *ex parte* application to issue § 1782 subpoenas, subject to reconsideration in the event of a motion. (ECF No. 10.) On February 19, 2021 - the last day authorized by this Court's January 14, 2021 order - Evenstar served the Subpoenas on Ms. Cao.

Evenstar's document Subpoena is exceedingly broad, requesting:

      i.      all documents concerning the CIH Transaction (Requests 1, 2);

      ii.     "[c]omplete copies of Next Decade's financial statements" for the years 2017 to present (Request 3);

      iii.    all documents concerning any payment from RCNC or NYMA to Mr. Mo, Mr. Cao, any Mo family member or relative, or any entity owned or controlled by Mr. Mo (Requests 4, 6);

      iv.    all documents concerning any payment from Fang to Mr. Mo, Mr. Cao, any Mo family member or relative, or any entity owned or controlled by Mr. Mo (Requests 5, 6);

      v.     all documents concerning any payment or loan to RCNC or NYMA from Mr. Mo, Mr. Cao, any Mo family member or relative, any "Upsky" entity, or any entity owned or controlled by Mr. Mo (Requests 7, 8, 11); and

      vi.    all documents concerning all loan transactions identified in any of RCNC's or NYMA's IRS Forms 990 for any year from entities unrelated to Fang (Requests 9–10).

10

(ECF No. 18-1 (2d Faust Decl.), Ex. A-8 (Evenstar Document Subpoena).)

Other than information concerning the CIH Transaction (Document Requests 1 and 2) and payments from Fang to Mr. Mo or his family or companies (Document Requests 5 and 6) - both of which, as explained below, we have discussed with Evenstar's counsel - the remaining listed items have nothing to do with any transactions identified in Evenstar's Cayman petition.

Regarding the deposition Subpoena, Evenstar's counsel has confirmed that it seeks testimony from Ms. Cao on all of the topics listed in the document Subpoena.

## IV.   THE PARTIES' UNSUCCESSFUL ATTEMPTS TO MEET AND CONFER

As detailed in the accompanying Coogan Declaration, we conferred with Evenstar's counsel in an attempt to resolve our disagreements with respect to the Subpoenas. We acknowledged that discovery regarding the CIH Transaction and any payments from Fang to Mr. Mo could be relevant to the Cayman proceedings, depending on positions ultimately taken in the respondents' pleadings, but urged Evenstar to narrow its other requests. Evenstar refused. Evenstar also refused to delay its Subpoenas or its motion to compel until after issue was joined in the Cayman proceedings. And, despite our advising Evenstar's counsel that Ms. Cao was unlikely to possess non-privileged responsive documents, and that we needed an opportunity to confirm whether she possessed any responsive documents, Evenstar filed its motion to compel more than a week before the return date of its document Subpoena. (Coogan Decl. ¶¶ 5(m), (r).)

Since the motion's filing, Ms. Cao has confirmed, and we have advised Evenstar's counsel in multiple written and oral communications, that Ms. Cao does not possess any documents responsive to Evenstar's Subpoenas or have any non-privileged testimony to give on the topics listed in the Subpoenas. (Cao Decl. ¶¶ 15, 17–22; Coogan Decl. ¶¶ 5(r), (s), (u), (w).) Evenstar refused to accept our representations, stating that they were "neither plausible nor sufficient," and declined our requests to withdraw its motion to compel. (Coogan Decl. ¶ 5(v).)

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

**ALVERSON TAYLOR & SANDERS**
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

1

2   **ARGUMENT**

28 U.S.C. § 1782 "authorizes, but does not require, a federal district court to provide

assistance" to a foreign litigant by ordering a person within its jurisdiction to give testimony or

produce documents "for use in" the foreign proceeding. Intel Corp. v. Advanced Micro Devices,

Inc., 542 U.S. 241, 255 (2004). Even where the statutory requirements of § 1782 are met, a

district court may decline to permit discovery on the basis of four discretionary factors outlined

in Intel: (i) whether the material sought is within the foreign tribunal's jurisdictional reach and

thus accessible absent § 1782 assistance; (ii) the nature of the foreign tribunal, the character of

the proceedings underway abroad, and the receptivity of the foreign tribunal to U.S. federal-court

assistance; (iii) whether the party seeking § 1782 discovery is attempting to circumvent foreign

proof-gathering restrictions; and (iv) whether the subpoena contains unduly intrusive or

burdensome requests. Intel 542 U.S. at 264–65 (2004); see also In re Jud. Assistance Pursuant to

28 U.S.C. 1782 by Macquarie Bank Ltd., 2015 WL 3439103, at *5 (D. Nev. May 28, 2015). As

Evenstar concedes, discovery under § 1782 also is subject to the scope and burden limitations of

the Federal Rules of Civil Procedure. Thus, "a district court evaluating a § 1782 discovery

request should assess whether the discovery sought is overbroad or unduly burdensome by

applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees v.

Buiter, 793 F.3d 291, 302 (2d Cir. 2015); see also Application of Qualcomm Inc., 162 F. Supp.

3d 1029, 1043 (N.D. Cal. 2016); In re Bayerische Motoren Werke AG, 2020 WL 1865301, at

*1–2 (N.D. Cal. Apr. 14, 2020).

Under these standards, Evenstar's motion to compel should be denied. In the alternative,

the Subpoenas should be adjourned until after issue has been joined in the Cayman proceedings.

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

## I.      EVENSTAR'S MOTION TO COMPEL SHOULD BE DENIED

*First*, Ms. Cao does not possess any responsive documents. *Second*, she has no responsive, non-privileged testimony to provide. *Third*, under Federal Rule 45 and the first and fourth Intel discretionary factors, to the extent that the Subpoenas seek information about two issues potentially relevant to the Cayman proceedings - the CIH Transaction and payments from Fang to Mr. Mo or his businesses - the Subpoenas are unduly intrusive and burdensome, as such discovery can best be obtained directly from Fang and Mr. Mo, who are parties to the Cayman litigation. *Fourth*, under Federal Rule 26 and Intel, the Subpoenas' remaining requests - relating to Next Decade, RCNC, and NYMA - are overbroad and unduly intrusive because they seek discovery that is utterly irrelevant to Evenstar's Cayman claims and confidential and proprietary to those entities. *Fifth*, to the extent that the Subpoenas seek discovery concerning RCNC and NYMA, they are duplicative of subpoenas issued directly to RCNC and NYMA in the Southern District of New York, which are currently the subject of Evenstar's separate and undisclosed application to compel in that court.

### A.      Ms. Cao possesses no responsive documents.

As attested in her accompanying declaration, Ms. Cao does not possess any documents responsive to Evenstar's document Subpoena. (Cao Decl. ¶ 15.) On that basis alone, Evenstar's motion to compel production of documents must be denied as moot. See Rodriguez v. Vizio, Inc., 2015 WL 11439029, at *6 (S.D. Cal. Jan. 6, 2015).

### B.      Ms. Cao has no responsive, non-privileged testimony to provide.

Evenstar's motion to compel deposition testimony likewise should be denied. Ms. Cao knows nothing about any of the topics identified in the Subpoenas other than the CIH Transaction. (Cao Decl. ¶¶ 17–22.) With respect to the CIH Transaction, what little she knows she learned from a private conversation with Mr. Mo, her husband. (Id. ¶ 17.) No other person

13

ALVERSON TAYLOR & SANDERS

LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

1    was present during the conversation. (Id.) Hence, it was a privileged marital communication and

2    is protected from disclosure under § 1782. See, e.g., United States v. Montgomery, 384 F.3d

3    1050, 1056 (9th Cir. 2004).

4         Evenstar's position that the marital communications privilege does not apply to

5    confidential communications between Ms. Cao and Mr. Mo is wrong. Under § 1782(a), "[a]

6    person may not be compelled to give his testimony or statement or to produce a document or

7    other thing in violation of any legally applicable privilege." The marital communications

8    privilege, which Evenstar concedes exists and applies in federal question cases (ECF No. 18

9    (Pet. Br.) at 10), provides that "[c]ommunications between the spouses, privately made, are

10   generally assumed to have been intended to be confidential, and hence they are privileged."

11   Wolfle v. United States, 291 U.S. 7, 14 (1934). "The privilege (1) extends to words and acts

12   intended to be a communication; (2) requires a valid marriage; and (3) applies only to

13   confidential communications, i.e., those not made in the presence of, or likely to be overheard

14   by, third parties." Montgomery, 384 F.3d at 1056. All but one of the cases cited in Evenstar's

15   brief are inapposite, as they involved non-private communications that were made in the

16   presence of third parties or not intended to be confidential. See United States v. Strobehn, 421

17   F.3d 1017, 1021 (9th Cir. 2005); United States v. Pakulsky, 952 F.2d 1400, 1992 WL 8226, at *4

18   (9th Cir. 1992); In re Reserve Fund Sec. & Derivative Litig., 275 F.R.D. 154, 164 (S.D.N.Y.

19   2011); Watson v. Albin, 2008 WL 2079967, at *4 (N.D. Cal. May 12, 2008). The remaining case

20   cited, United States v. Marashi, actually supports application of the marital communications

21   privilege here, as the court held it to be "clear that the privilege covers" private communications

22

23

24

14

between a husband and wife outside the presence of third parties. 913 F.2d 724, 730 (9th Cir. 1990).[3]

### C. To the extent that the Subpoenas seek discovery concerning the CIH Transaction and payments from Fang, they are unduly intrusive and burdensome to Ms. Cao because such discovery can most efficiently be obtained directly from the Cayman parties Fang and Mr. Mo.

Only two topics identified in Evenstar's Subpoenas are potentially relevant to the Cayman proceedings because they relate to allegations in Evenstar's Amended Petition:

> (i)    the CIH Transaction (Document Requests 1, 2); and

> (ii)   payments or loans from Fang to Mr. Mo or his companies (Document Requests 5, 6[4]).

By definition, Fang and Mr. Mo participated directly in any such transactions and would possess any relevant information about them. Indeed, whatever Ms. Cao knows about the CIH Transaction is more readily and appropriately learned from Mr. Mo, who is a party and amenable to service in the Cayman Islands, without implicating the privilege issues raised by Ms. Cao.

Under the Federal Rules of Civil Procedure, where discovery is available from both a party and a non-party to a litigation, it should be sought from the party so as not to unduly burden the non-party. See, e.g., Amini Innovation Corp. v. McFerran Home Furnishings, Inc., 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("Courts are particularly reluctant to require a non-party to

---

[3] Evenstar also offers several red herrings and non sequiturs in an effort to overcome application of the marital communications privilege, arguing variously that the privilege "cannot shield disclosure of . . . transactions"; that communications "associated" with "corporate and trust entities" "lose any 'confidentiality'"; that "a communication made in the presence of a third party is not privileged"; and that the separate "adverse spousal testimony" privilege does not apply. (ECF No. 18 (Pet. Br.) at 10–11.) To the extent that they make any sense, Evenstar's arguments simply do not apply here, where only a confidential communication between two spouses is at issue. (Cao Decl. ¶ 17.) Such a communication plainly is privileged under the case law cited above.

[4] Document Request 5 also seeks information regarding any payment from Fang to Ms. Cao. However, Ms. Cao has never received any payment from Fang. (Cao Decl. ¶ 20.)

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

1   provide discovery that can be produced by a party. Accordingly, a court may prohibit a party

2   from obtaining discovery from a non-party if that same information is available from another

3   party to the litigation." (internal quotation marks and brackets omitted)); <u>Giezie v. Valley Health</u>

4   <u>Sys., LLC</u>, 2012 WL 3929446, at *4 (D. Nev. Sept. 7, 2012) ("The non-party status of the

5   movant is a factor to be considered in determining whether the burden imposed by a subpoena is

6   undue.").

7        Likewise, the discretionary factors in <u>Intel</u> counsel denying duplicative discovery from a

8   non-party under § 1782 where, as here, information about the CIH Transaction and any payments

9   from Fang to Mr. Mo "is within the foreign tribunal's jurisdictional reach and thus accessible

10   absent Section 1782." <u>Macquarie Bank Ltd.</u>, 2015 WL 3439103, at *4, *9 (D. Nev. May 28,

11   2015) ("When the information sought is equally available through the foreign proceeding from a

12   party to that proceeding, such requests targeting a different person in the United States are by

13   their very nature unduly burdensome."); <u>In re Fischer Advanced Composite Components AG</u>,

14   2008 WL 5210839, at *5 (W.D. Wash. Dec. 11, 2008) ("[T]he Court ultimately finds that where

15   discovery is 'equally available in both foreign and domestic jurisdictions, a district court [may]

16   conclude that the § 1782 application [is] duplicative.'") (quoting <u>In re Application for an Order</u>

17   <u>Permitting Metallgesellschaft AG to take Discovery</u>, 121 F.3d 77, 79 (2d Cir. 1997)).[5]

18        There is no reason why discovery regarding the CIH Transaction and any relevant

19   payments from Fang to Mr. Mo (or anyone else) could not be obtained directly from Fang and

20

21   [5] The one case that Evenstar cites in arguing that it should not be required to seek discovery from
     the parties to the Cayman proceedings, <u>In re NanoPyxis Co., Ltd.</u>, 2018 WL 1156838 (N.D. Cal.
22   Mar. 5, 2018), is readily distinguishable. There, discovery in the foreign proceeding was simply
     not available, as the defendant in the foreign proceeding was "no longer...in operation" and
     "ha[d] been shut down, its office and factory ha[d] been closed, and court mail sent to
23   [defendant] ha[d] been returned." <u>Id.</u> at 3, 5; <u>see also id.</u> at 3–4 (describing discovery in foreign
     proceeding as "not viable" and "virtually impossible"). Here, Evenstar has not even attempted to
24   seek discovery in the Cayman proceedings.

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

Mr. Mo in the Cayman proceedings. Evenstar's wan suggestion that it "cannot be assumed that Fang itself will produce complete documentation" because Fang's auditors noted a weakness in Fang's internal controls (ECF No. 18 (Pet. Br.) at 9 n.7; ECF No. 18-1 (2d Faust Decl.) ¶¶ 16(a)–(d)) ignores that Fang's auditors also opined that the company's financial statements for the relevant years "present[ed] fairly, in all material respects, the financial position of the Company" (ECF No. 18-1 (2d Faust Decl.), Exs. A-10, A-12, A-13). In any event, under relevant case law, Evenstar's vague concern about the Cayman parties' ability to produce the discovery sought is no basis to permit § 1782 discovery against non-party Ms. Cao. See Macquarie Bank Ltd., 2015 WL 3439103, at *6–*7 (rejecting petitioner's argument that there was "no guarantee" that party would produce discovery sought in foreign proceeding); In re Fischer Advanced Composite Components AG, 2008 WL 5210839, at *3–*4 (rejecting petitioner's argument that there was "no certainty" that party to foreign proceeding would produce discovery sought, where petitioner sought § 1782 discovery from non-party "before even evaluating [party's] proffered discovery" in foreign proceeding).

**D.    The Subpoenas' remaining requests concerning Next Decade, RCNC, and NYMA are overbroad because the discovery sought is irrelevant to the Cayman proceedings.**

The balance of Evenstar's requests seek documents and deposition testimony on topics having nothing to do with Evenstar's Cayman claims against Fang and Mr. Mo - namely:

(i)    "[c]omplete" financial statements of Next Decade (Document Request 3);

(ii)    any payment from RCNC or NYMA to Ms. Cao, Mr. Mo, their family, or Mr. Mo's unrelated companies, including "any and all" bank records relating to any such payment (Document Requests 4, 6);

(iii)    any loan or payment to RCNC or NYMA from Mr. Mo, his family, or his independent companies (Document Requests 7, 8); and

(iv)    loan transactions listed in any IRS Form 990 filed by RCNC or NYMA "at any time" relating to Next Decade and various Upsky entities (Document Requests 9,

10) as well as "complete" bank records relating to any such loan transactions (Document Request 11).

Tellingly, Evenstar does not even attempt to explain how any of the above topics could be relevant to the Cayman litigation. Rather, Evenstar attempts to justify broad discovery on these issues by stating that "it is necessary and proper to examine the financial dealings of [Next Decade, RCNC, and NYMA], including the source of funding for their real property purchases, given the general pattern of misappropriation of Fang resources" that Evenstar alleges in the Cayman petition. (ECF No. 18 (Pet. Br.) at 2.)[6]

In other words, Evenstar unabashedly is on fishing expedition, and Nevada is not the right venue for fishing. Evenstar should be directed to fish under the auspices of the Cayman court. Ninth Circuit courts have roundly rejected efforts to enforce § 1782 subpoenas, like those in this case, that "are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." In re Ex Parte Application of Qualcomm Inc., 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016); see also In re Fagan, 2019 WL 8011742, at *3 (C.D. Cal. May 10, 2019) ("Application's request for bank records and related information is intrusive and burdensome, and Petitioner has not convincingly shown that he seeks this sensitive information for a purpose more substantial than a mere 'fishing expedition.'"); In re King.com Ltd., 2016 WL 4364286, at *8 (N.D. Cal. Aug. 16, 2016) (quashing § 1782 subpoenas that sought "evidence on matters other than those at issue in" underlying foreign proceedings, stating that "[t]he Court cannot imagine more obvious evidence that a party seeks an impermissible fishing expedition through a § 1782

---

[6] Evenstar also attempts to salvage its position by referencing training fees allegedly paid by a Fang affiliate to WSGTC. (See ECF No. 18 (Pet. Br.) at 7, Cayman Petition ¶ 173.) But Evenstar's Subpoenas to Ms. Cao do not seek any documents related to WSGTC. Nor does Evenstar suggest that Ms. Cao had any connection to WSGTC or would have any reason to know anything about training fees paid to it. She did not and would not. (Cao Decl. ¶ 6.)

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

application"); Macquarie Bank Ltd., 2008 WL 5210839, at \*9–\*10 (quashing § 1782 subpoenas seeking "broad and virtually all-encompassing categories of information," including documents and testimony concerning all "assets and liabilities" of various entities).

**E.  Evenstar has moved to compel the same discovery directly from RCNC and NYMA in the Southern District of New York that it seeks to compel from Ms. Cao in this Court.**

To the extent that Evenstar's motion seeks to compel discovery related to RCNC and NYMA, it should further be denied because Evenstar is currently in the process of requesting the Southern District of New York to compel the same discovery directly from RCNC and NYMA. On April 9, 2021, the day after Evenstar submitted its motion to compel in this Court - and without informing this Court - Evenstar filed a letter in the Southern District of New York seeking a pre-motion conference to compel RCNC and NYMA to produce documents concerning the same transactions at issue here, *i.e.*: (i) any loan or payment to RCNC or NYMA from Mr. Mo, his family, or his independent companies; and (ii) the same loan transactions from RCNC's and NYMA's Forms 990 that are identified in Evenstar's document Subpoena to Ms. Cao. (Coogan Decl. ¶ 5(n), Ex. 2 (April 9, 2021, Letter from Timothy G. Nelson to Judge Cathy Seibel of the Southern District of New York); compare Coogan Decl., Ex. 3 (S.D.N.Y. Subpoena to RCNC), Document Requests 4–7, and Ex. 4 (S.D.N.Y. Subpoena to NYMA) Document Requests 2–4, with ECF No. 18-1 (2d Faust Decl.) Ex. A-8 (Cao document Subpoena), Requests 7–11.)

The Court should not permit Evenstar to game the federal judicial system in this manner. Evenstar's motion to compel discovery from Ms. Cao related to RCNC and NYMA should be denied, and the Southern District of New York permitted to rule, *de novo* and without interference, on whether the discovery sought from RCNC and NYMA is permissible under § 1782 and the Federal Rules. See Lufthansa Technik AG v. Astronics Corp., 553 F. App'x 22, 23

ALVERSON TAYLOR & SANDERS
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

(2d Cir. 2014) (Summary Order) (denying application for discovery pursuant to 28 U.S.C. § 1782 as duplicative of application in other U.S. district court where the "document requests in both petitions are substantively identical, they relate to the same foreign proceeding, and both [respondents] are represented by the same counsel").

## II.    IN THE ALTERNATIVE, THE SUBPOENAS SHOULD BE ADJOURNED UNTIL AFTER ISSUE IS JOINED IN THE CAYMAN ISLANDS PROCEEDINGS

If the Court is inclined to permit Evenstar to take discovery from Ms. Cao, it should nevertheless adjourn the Subpoenas until after responsive pleadings have been filed and issue joined in the Cayman proceedings. As explained, under Cayman law, the permissible scope of discovery in the Cayman proceedings cannot be measured without reference to the "matters in question"—which can only be determined once responsive pleadings have been filed. (Robinson Decl. ¶ 22.) For example, if the Cayman respondents were to admit certain facts alleged by Evenstar regarding the CIH Transaction or Fang's payments to Mr. Mo (or other issues), such admissions would obviate the need for discovery as to those facts. (Id. ¶ 24.) Because Evenstar has not articulated any prejudice from delaying discovery—and, indeed, has not even requested any discovery in the Cayman proceedings—the Subpoenas should be adjourned until they can be tailored to the "matters in question" consistent with Cayman law.

. . .

. . .

. . .

20

## **CONCLUSION**

For the reasons set forth above, the Court should deny Evenstar's motion to compel or, in the alternative, modify and adjourn Evenstar's Subpoenas as stated.

Dated this 7th day of May 2021.

ALVERSON TAYLOR & SANDERS

_____

J. BRUCE ALVERSON, ESQ.
Nevada Bar No. 1339
KARIE N. WILSON, ESQ.
Nevada Bar No. 7957
6605 Grand Montecito Pkwy, Ste. 200
Las Vegas, NV 89149
702-384-7000 Phone
702-385-7000 Fax

LANKLER SIFFERT & WOHL LLP
MATTHEW G. COOGAN, ESQ. (*pro hac application pending*)
JOHN S. SIFFERT, ESQ. (*pro hac application pending*)
BRICE JASTROW, ESQ. (*pro hac application pending*)
500 Fifth Avenue
New York, NY 10110
(212) 921-8399
*Attorneys for Jing Cao*

## CERTIFICATE OF ELECTRONIC SERVICE

I certify that on the 7th day of May 2021, service of the above and foregoing **RESPONDENT JING CAO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS** *DUCES TECUM* **AND** *AD TESTIFICANDUM* was made by electronically filing a true and correct copy of the same to each party addressed as follows:

_____

Employee of ALVERSON TAYLOR & SANDERS

k:\z-client\27140\pleadings\opp mtn compel.docx

**ALVERSON TAYLOR & SANDERS**
LAWYERS
6605 GRAND MONTECITO PKWY STE 200
LAS VEGAS, NV 89149
(702) 384-7000

22